UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-mj-8557-BER

UNITED STATES OF AMERICA

v.

JOHN ALEXANDER POTES,

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? NO

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? NO

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? NO

4. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? NO

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: _____
KATIE SADLO
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 1026417
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1043
Fax: (561) 805-9846
Katie.Sadlo@usdoj.gov

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) |
| JOHN ALEXANDER POTES, | ) Case No. 24-mj-8557-BER |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 19, 2024__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(ii)(II) | Distribution of a Controlled Substance (Cocaine) |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

Sworn and attested to me by applicant by telephone (FaceTime) per the requirements of Fed. R. Crim. P. 4(d) and 4.1

*Complainant's signature*

Special Agent Trinita Vernao, DEA
*Printed name and title*

Date: __10/24/2024__

*Judge's signature*

City and state: __West Palm Beach, FL__   Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF DEA SPECIAL AGENT TRINITA VERANO
## IN SUPPORT OF CRIMINAL COMPLAINT

I, Trinita M. Verano, being duly sworn, depose and hereby declare as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent ("SA") with the United States Department of Justice, Drug Enforcement Administration ("DEA"), and have been so employed since October 2017. I am currently assigned to the DEA Miami Field Division, West Palm Beach District Office ("WPBDO"), and have been so employed since November 2023. Before that time, I was assigned to the San Francisco Field Division, Salinas Post of Duty in California. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, § 2516. My daily occupation is the investigation of violations of controlled substance laws and other related offenses.

2.     As part of my training to become a Special Agent, I successfully completed a twenty-week DEA Basic Agent Training Academy at the DEA Academy in Quantico, Virginia. This training included instruction on controlled substances and the investigation of controlled substance violations, including, but not limited to Title 21, United States Code, Sections 841 and 846. I saw samples of controlled substances during my training at the academy, handled and tested each drug, and participated in practical exercises related to the investigation and detection of drug trafficking activities. Additionally, this training included several hundred hours of comprehensive, formalized instruction in, but not limited to, narcotics investigations, drug interdiction, financial

1

investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures. This training also included obtaining federal search warrants and the documentation of investigative efforts. After I graduated from the DEA Academy, I participated in a Field Training Agent Program. During this program, I received hands-on training from experienced senior investigators in all aspects of investigative work associated with drug enforcement activities. From my training at the DEA Academy and through my experience as a DEA Special Agent, I am familiar with various techniques utilized in the manufacture, distribution, and sale of controlled substances.

3. During my law enforcement career, I have managed and participated in numerous narcotics and financial investigations, either as the lead case agent or supporting agent. I also have assisted joint inter-agency state and federal investigations. I have been involved in seizures of methamphetamine, fentanyl, cocaine, heroin, marijuana, and other controlled substances. To assist in furthering these investigations, I have managed multiple confidential sources to target drug traffickers, conducted physical surveillance, assisted in the execution of search warrants, and participated in the controlled purchases of controlled substances, among other things. I have participated in interviews of suspects arrested for drug violations, reviewed and analyzed recorded conversations of drug traffickers, and debriefed witnesses who had personal knowledge regarding narcotics trafficking organizations. In addition, I have discussed with numerous law enforcement officers, and confidential sources, the methods and practices used by narcotics traffickers. I also have participated in many aspects of drug and financial investigations including, but not limited to, undercover operations (including purchasing illegal drugs in an undercover capacity), telephone toll analysis, records research, and physical and electronic surveillance. I have served as the affiant

for federal search warrants, including search warrants for electronic devices and residences associated to persons involved in drug trafficking, as well as federal criminal complaints.

4. I have participated in the execution of no less than fifty warrants to search particular locations for controlled substances and/or related paraphernalia, indicia, and other evidence of violations of federal controlled substance statutes. As a result, I have encountered and become familiar with different methods and trends in drug trafficking, as well as various tools, paraphernalia, and related articles utilized by traffickers in their efforts to import, conceal, manufacture, and distribute controlled substances. Central to all trafficking efforts, regardless of the drug, is the trafficker's effort to make a profit from those dealings or transactions, either for the purchase of additional substances or material gain.

5. In addition, I frequently speak with other DEA Special Agents, and with local law enforcement officers experienced in drug trafficking investigations. In doing so, I have gained additional information concerning the trends in drug trafficking and the practices of drug traffickers. These agents and officers have advised me of the substance of their debriefings and the results of their own investigations. On numerous occasions, I have personally spoken with drug users, admitted drug traffickers, and with informants. During these conversations, I have learned additional information about the methods of manufacture, importation, concealment, packaging, transportation, and sale utilized by various drug traffickers and drug trafficking organizations ("DTOs").

6. This affidavit is made in support of a complaint charging John Alexander POTES with a violation of Title 21, United States Code, § 841(a)(1) and (b)(1)(B)(ii)(II), Distribution of a Controlled Substance (Cocaine). The information set forth in this affidavit is not intended to

detail each and every fact and circumstance of the investigation or all information known to me and other law enforcement investigators. Rather, this affidavit serves to establish probable cause for the offense stated. The facts set forth in this affidavit are based upon my personal observations, my training and experience, information obtained from other agents and witnesses, and my review of law enforcement reports.

## STATEMENT OF PROBABLE CAUSE

### Debriefing of DEA Confidential Source in May 2024

7. On May 9, 2024, Agents conducted an initial debrief of a DEA Confidential Source ("CS") as to his/her knowledge of drug trafficking in South Florida. The CS shall be referred to hereinafter in the feminine gender even though this may not be reflective of the CS's true gender. The CS cooperated with law enforcement in hopes of receiving consideration from the Court in the event she is charged in a state investigation. Agents informed the CS that there were no promises or guarantees of any outcome for the CS related to any potential state charges.

8. During the initial debrief, the CS told Agents that her local cocaine source of supply is a Colombian male that she knows as "Alex." Using Google Maps on an Agent's work-issued laptop, the CS was able to show Agents the location of "Alex's" residence, where he lives with his mother, based on the CS's prior experience visiting the residence: an address located in Lantana, FL (hereafter, "TARGET RESIDENCE"). The CS provided XXX-XXX-6312 as "Alex's" telephone number. A search of Florida's Department of Highway Safety and Motor Vehicle Driver and Vehicle Information Database ("DAVID") records for the address provided by the CS confirmed that the TARGET RESIDENCE is listed as the residence for an individual

named John Alexander POTES.[1] The CS subsequently confirmed the DAVID photo for John Alexander POTES, hereinafter referred to as POTES, depicted the individual she referred to as "Alex."

9. The CS stated she knows POTES because they went to school together. The CS told Agents POTES was arrested federally on drug charges and was released from prison in 2016. Thereafter, Agents reviewed POTES' NCIC Criminal History, which revealed, among other arrests, (1) a prior federal arrest from April 2009 by FBI Orlando for Possession with Intent to Distribute 500 or more grams of cocaine, which resulted in 24 months imprisonment at the Bureau of Prisons, and (2) a 2016 Florida state conviction for Possession with Intent to Sell or Deliver Cocaine and Possession of Oxycodone, which resulted in 92 days in state jail.

10. Sometime after POTES was released from custody in 2016, the CS bumped into POTES in public. POTES asked the CS if the CS was still messing around, which the CS knew to mean dealing drugs, and POTES gave the CS his phone number and told the CS to call him if she needed anything.[2] Sometime in 2023, the CS ran into POTES again and POTES gave the CS his number. On this occasion, POTES told the CS he would sell her one (1) ounce of cocaine for $700 USD. The first time the CS purchased cocaine from POTES was around late 2023, and the CS would pay $500-$600 per ounce, depending on the quantity being purchased (for a higher amount purchased of drugs, POTES would charge the CS less per ounce). The CS told agents that she is typically able to obtain cocaine from POTES the same day that she calls POTES, and that

---

[1] The DAVID record search for the TARGET RESIDENCE also revealed additional individuals who reside at the residence who share the last name Potes.

[2] During this encounter, POTES provided the same phone number identified in paragraph 8.

5

she predominately picks up the cocaine directly from POTES's residence, the TARGET RESIDENCE, and conducts the deal inside the residence.

### Controlled Purchases Between CS and POTES

11.  On June 18, 2024, Agents met with the CS at the WPBDO. During the meeting, Agents directed the CS to contact POTES to order a quantity of cocaine. The CS contacted POTES at the following number: XXX-XXX-6312. During the telephone call, POTES told the CS that he had recently been in Colombia for a month and was currently dry regarding narcotics. POTES told the CS that he expected to have more product within the next week. Agents recorded this telephone call.

12.  On July 18, 2024, DEA and PBSO personnel conducted a buy/walk operation where the CS purchased suspected cocaine from POTES at the TARGET RESIDENCE.

13.  On July 18, 2024, at approximately 12:00 p.m., a pre-operational briefing was conducted wherein all participants were briefed as to the details of the operational plan, which was the controlled purchase by the DEA CS of four and one half (4 1/2) ounces of suspected cocaine for $2,250 in DEA Official Advance Funds (OAF) from POTES.

14.  After the pre-operational briefing, Agents met with the CS and directed the CS to communicate with POTES to facilitate the purchase of the cocaine using telephone number XXX-XXX-6312. Based on her previous experience purchasing narcotics from POTES, the CS understood the pickup location for the purchase to be the TARGET RESIDENCE. Before the operation, Agents conducted a search of the CS and her vehicle, to ensure that no contraband, weapons, and/or currency were present, of which there were none. Additionally, before the

operation, the CS was equipped with $2,250.00 in OAF designated by the DEA to complete the transaction. During the course of the operation, the CS was visually and audibly monitored via an electronic recording device. The CS was followed by Agents/Officers to and from the meet location during the operation.

15. At approximately 12:20 p.m., surveillance was established around the vicinity of the TARGET RESIDENCE.

16. At approximately 12:30 p.m., Agents observed the following vehicles parked at the TARGET RESIDENCE: a white Toyota Camry sedan parked on the eastern side of the driveway, a blue Toyota Camry sedan parked in the middle, a black Toyota Camry sedan parked on the western side of the driveway to the far right, and a black sport utility vehicle (SUV) which was parked in reverse on the far western side of the residence (due to the SUV being parked in reverse, surveillance units were unable to observe the license plate of this vehicle). The three (3) sedans parked in the driveway are all registered to the TARGET RESIDENCE to individuals other than POTES.[3]

17. At approximately 12:54 p.m., the CS and her vehicle arrived at the TARGET RESIDENCE. The CS exited her vehicle and walked up to the front door of the TARGET RESIDENCE. Agents observed a Hispanic/Latino male adult with short, dark hair open the front door of the TARGET RESIDENCE and greet the CS. Agents later identified the Hispanic/Latino male as POTES based on a comparison of POTES' Florida driver's license photo provided during the pre-operational briefing and photographs that Agents captured during the operation. POTES

---

[3] Notably, Agents observed POTES driving the blue Toyota Camry at the end of August 2024.

7

was wearing a black t-shirt and gray and black shorts. The CS entered the TARGET RESIDENCE and the front door was shut.

18. At approximately 1:03 p.m., Agents observed the front door of the TARGET RESIDENCE open and the CS exit. The CS departed the area and was followed by Agents back to the neutral location.

19. After the operation, the CS transferred custody of a gray plastic shopping bag containing a clear Ziploc baggie, which further contained a white powdery substance, suspected to be cocaine, to Agents. On the same date, Agents transported the suspected cocaine to the WPBDO. Agents processed the suspected cocaine, with a total gross weight of 163.5 grams, and sent the suspected cocaine to the DEA Southeast Laboratory for analysis.

20. Upon further analysis by the DEA Southeast Laboratory, the approximately four and one half (4 ½) ounces of cocaine provided to the CS by POTES was identified as cocaine, weighing approximately 125.6 grams.[4]

21. A review of the visual and audio recording provided by the electronic recording device the CS wore during the transaction on July 18, 2024, confirms that POTES supplied the cocaine to the CS.

22. On September 13, 2024, Agents debriefed the CS at the WPBDO. During the CS debriefing, Agents directed the CS to contact POTES using telephone number XXX-XXX-6312, in order to request one half kilogram of cocaine, and also to confirm the price of this amount.

---

[4] Per analysis completed by the DEA Southeast Laboratory, the cocaine was identified as cocaine hydrochloride with a substance purity of 86%, plus/minus 6%.

8

POTES later told the CS that the price would be $8,500, and that he would be available to meet the CS the following week for the deal.

23. On September 19, 2024, Agents conducted a buy/walk operation where the CS purchased suspected cocaine from POTES at the TARGET RESIDENCE.

24. On September 19, 2024, at approximately 11:30 a.m., a pre-operational briefing was conducted wherein all participants were briefed as to the details of the operational plan, which was the controlled purchase by the DEA CS of one half (1/2) kilogram and three (3) additional ounces of suspected cocaine from POTES for $10,000 in DEA OAF.

25. Shortly before the pre-operational briefing, surveillance was established around the vicinity of the TARGET RESIDENCE.

26. At approximately 11:27 a.m., Agents observed the same four vehicles located at the TARGET RESIDENCE during the July 18, 2024, buy/walk operation in the driveway of the TARGET RESIDENCE. Agents also observed a white van parked at the TARGET RESIDENCE (Agents were unable to observe the license plate of this vehicle), which departed before the buy/walk operation began.

27. After the pre-operational briefing, Agents met with the CS and directed the CS to communicate with POTES to facilitate the purchase of the cocaine on telephone number XXX-XXX-6312.[5]

---

[5] On the previous day, September 18, 2024, Agents directed the CS to communicate with POTES to facilitate the purchase of the cocaine, however, when the CS attempted to contact POTES on telephone number XXX-XXX-6312, it appeared that the telephone was either disconnected or off. Agents then directed the CS to drive to the TARGET RESIDENCE, to try and make direct contact with POTES. POTES eventually answered the door and requested to meet with the CS the following day to complete the deal.

28.     Before the operation, Agents conducted a search of the CS and her vehicle, to ensure that no contraband, weapons, and/or currency were present, of which there were none. Additionally, before the operation, the CS was equipped with $10,000.00 in OAF designated by the DEA to complete the transaction. During the course of the operation, the CS was visually and audibly monitored via an electronic recording device. The CS was followed by Agents/Officers to and from the meet location during the operation.

29.     At approximately 12:16 p.m., the CS and her vehicle arrived at the TARGET RESIDENCE. The CS exited her vehicle and walked up to the front door of the TARGET RESIDENCE. Agents observed a Hispanic/Latino male adult with short, dark hair open the front door of the TARGET RESIDENCE and greet the CS. Agents later identified the Hispanic/Latino male as POTES based on a comparison of POTES' Florida driver's license photo provided during the pre-operational briefing and photographs that Agents captured during the operation. The CS entered the TARGET RESIDENCE and the front door was shut.

30.     At approximately 12:26 p.m., Agents observed the front door of the TARGET RESIDENCE open and the CS exit. The CS departed the area and was followed by Agents back to the neutral location.

31.     After the operation, the CS transferred custody of a plastic grocery bag tied off with a knot, containing one (1) large Ziploc baggie with a blue closure (which contained a white powdery substance, suspected to be cocaine), and one (1) smaller Ziploc baggie with a purple closure, further containing a smaller, clear sandwich baggie (which contained a white powdery substance, suspected to be cocaine), to Agents. On the same date, Agents transported the

suspected cocaine to the WPBDO, and processed the cocaine, with a total gross weight of 637.5 grams, and sent the suspected cocaine to the DEA Southeast Laboratory for analysis.

32. Upon further analysis by the DEA Southeast Laboratory, the approximately one-half kilogram of cocaine provided to the CS by POTES was identified as cocaine, weighing approximately 585.5 grams.[6]

33. A review of the visual and audio recording provided by the electronic recording device the CS wore during the transaction on September 19, 2024, confirms that POTES supplied the cocaine to the CS.

## Residential Search Warrant

34. On or about October 15, 2024, law enforcement obtained a search warrant for the TARGET RESIDENCE and executed the search warrant on October 23, 2024. During the execution of the search warrant, Agents discovered, in addition to other items, the following: a quantity of a white, powdery substance, which appeared to be cocaine (the total amount of which appears to be approximately one quarter of a kilogram), several digital scales, several small, pre-packaged baggies containing a white, powdery substance (which appeared to be cocaine), a quantity of small, Ziploc baggies, a kilogram wrapper, rubber bands, counterfeit pens for detecting counterfeit bills, and a forty pound bag labeled 'Anhydrous Caffeine,' which contained a white, crystalline powder (which appeared to be utilized as a cutting agent).

---

[6] Per analysis completed by the DEA Southeast Laboratory, the cocaine was identified as cocaine hydrochloride with a substance purity of 87%, plus/minus 6%.

11

## CONCLUSION

35. Based on the foregoing, I respectfully submit that there is probable cause to believe that on September 19, 2024, John Alexander POTES committed the criminal offense of Distribution of a Controlled Substance, cocaine, in violation of Title 21, United States Code, § 841(a)(1) and (b)(1)(B)(ii)(II).

FURTHER YOUR AFFIANT SAITH NAUGHT.

Trinita M. Verano
Special Agent
Drug Enforcement Administration

Sworn and attested to before me pursuant to Fed. R. Crim. P. 4.1 and 4(d) and signed by me on this 24 day of October, 2024.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: __JOHN ALEXANDER POTES__

**Case No**: __24-mj-8557-BER__

Count #: 1

Distribution of a Controlled Substance (Cocaine)

Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(ii)(II)
* **Max. Term of Imprisonment:** 40 years
* **Mandatory Min. Term of Imprisonment (if applicable):** 5 years
* **Max. Supervised Release:** 4 years to life
* **Max. Fine:** $5,000,000
* **Special Assessment**: $100

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 24-mj-8557-BER

### BOND RECOMMENDATION

DEFENDANT: JOHN ALEXANDER POTES

Pre-trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: Katie Sadlo

Last Known Address: 3498 Gondolier Way,

Lantana FL 33462

What Facility: _____

Agent(s): SA Trinita Verano, DEA
(FBI) (SECRET SERVICE) (DEA) (IRS) (ICE) (**OTHER**)